## Cramp & Co., Appellant, v. Central Realty Corporation.

*Contracts—Building contracts—Extra work—Requirements of building inspector—Architect—Arbitration clause—Derogation of jury trial—Police power—Burden of proof.*

1. A provision in a building contract to the effect that "no alteration or additions or anything that shall put additional cost upon the owner shall be made in or to the work, except upon the written order of the architects," and that the decision of the architects "as to the true construction and meaning of the drawings and specifications shall be final," does not apply to extra outlay not approved by the architects, required by an order of the building inspector specifying that the soil at the depth specified in the plans was insufficient to support the building, and directing that the excavation be deepened and the foundation and columns be increased in size.

2. Such an order by a public official, acting within the police power of the city, and out of consideration for the public safety, is not a matter as to which either the owner or the contractor could exercise an option. It is final and conclusive on all parties, regardless of whether or not an order for the change is signed by the architect.

3. The question involved by such an outlay is not a question of the construction or meaning of the drawings and specifications, but one relating to the effect of an order of the building inspector upon the contract between the parties.

4. The law recognizes the right of parties to contracts to stipulate the method of arbitrating questions arising between them in the performance of their agreement, but since such privilege is in derogation of the common law right of trial by jury, it will not be extended beyond the express terms agreed upon between the parties.

*Contract—Building contract—Entire building—Unforeseen contingencies—Liability of owner or contractor—Extra work.*

5. A proposal for a contract for an entire building required bidders to examine the site and become familiar with the work and the ground "as cost of excavation must be included in the estimate and no extras will be allowed for rock excavation." The contract specified excavation to necessary depth for cellar and boiler rooms, also for foundations, "assuming good bearing soil is to be found at a depth of five feet below the main basement and boiler room floor levels." The contract contained no express provisions relating to soil tests. *Held,* that the provisions as to the excavation should be deemed an assurance to the contractor that, in estimating the work, he need not figure on the possible expense of excavating beyond the depth stated, but that if a further depth was required additional pay for such extra work might be expected.

*Contracts—Building contracts—Extra work — Written order— Waiver—Time—Pleading—Practice Act of May 14, 1915, P. L. 483.*

6. Where a building contract provides that extra work should not be paid for except on a written order from the architects, countersigned by the owners, a further provision therein that no specification "can be waived by either party unless such waiver is expressed in writing and duly signed," may in turn be waived, if the parties see fit to do so.

7. Under the Act of May 14, 1915, P. L. 483, requiring the statement of claim to be "as brief as the nature of the case will admit," an averment in a statement of claim for extra work by a contractor in a suit on a building contract, is sufficient, which alleges that a provision in the contract requiring a written order for extra work had been waived by the parties," and that similar verbal orders to the one in suit had "been recognized as valid and in some instances said extras had been paid for."

8. In such case, if the provision was waived by defendant, it is not a fatal defect on demurrer that the statement fails to state the time of waiver, so long as it appears to have been made before the work and materials were furnished.

*Contract—Building contract—Damages—Pleading—Practice, C. P.—Plaintiff's statement—Damages for delay—Extras—Averments.*

9. Where, in an action on a building contract, plaintiff claims consequential damages resulting from delay in the work, a statement of claim is sufficient which sets forth the amount paid by plaintiff "for a certain number of square feet of lumber for concrete forms required in excess of the lumber that would have been required for that purpose if the building could have been constructed as contemplated by the contract," and avers that tho amount paid, stating it, was the fair and reasonable market price.

10. In such case, the statement of claim, covering an amount paid for the extra hauling, loading and unloading of steel, and for the postponed delivery of certain rods to be used in concrete, is insufficient, which does not state the place from which the hauling was made, the number of laborers employed, the time of their employment, the wages paid them, and the specific reason why the delay of delivery of the rods required the expenditure claimed.

Argued March 15, 1920.  Appeal, No. 188, Jan. T., 1920, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1919, No. 765, for defendant on questions of law raised by affidavit of defense in case of Cramp & Co. v. Central Realty Corporation of Philadelphia.  Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ.  Judgment modified.

Assumpsit for balance alleged to be due on building contract.  Before Shoemaker, J.

The opinion of the Supreme Court states the facts.

The court below entered the following judgment:

"Judgment for plaintiff for $34,290.09, and for the amount claimed in deductions, $57,465.17, with leave to defendant to file an affidavit to the merits of the latter claim.  Judgment for defendant on the questions of law raised as to the amount claimed for extra work, $13,-606.05, and as to the amount claimed for consequential damages $44,452.15."

Plaintiff appealed.

*Error assigned* was judgment of court, quoting it.

*Owen J. Roberts,* with him *Junkin & Newbourg,* for appellant.—Plaintiff did not assume the risk of unforeseen contingencies: Miller v. Homeopathic M. & S. Hospital, 243 Pa. 502; Murphy v. Liberty Nat. Bank, 184 Pa. 208; Monaca Boro. v. Monaca St. Ry. Co., 247 Pa. 242.

The provisions in the contract relied upon by defendant do not cover the contingency here under consideration: U. S. v. Spearin, 248 U. S. 132; Christie v. U. S., 237 U. S. 234; Cunningham v. Fourth Baptist Church, 159 Pa. 620.

The provisions of the contract requiring any waiver to be in writing may also be waived by the parties thereto: Bartlett v. Stanchfield, 148 Mass. 394; Simpson v. Mann, 71 W. Va. 516; Miller v. McCaffrey, 9 Pa. 245.

*Edwin O. Lewis,* for appellee.—The judgment was properly entered as to all items of the statement involved in this appeal: Payne v. Roberts, 214 Pa. 568; Fay v. Moore, 261 Pa. 437; Erbeck v. M. & C. Lake Traction Co., 237 Pa. 121; Fay v. Lester Piano Co., 39 Pa. Superior Ct. 87; Reynolds v. Caldwell, 51 Pa. 298; Pittsburgh, etc., Lumber Co. v. Sharp, 190 Pa. 256.

The decision of the architects as to the two claims for extras is conclusive: Hunn v. Penna. Institution for Instruction of the Blind, 221 Pa. 403; Payne v. Roberts, 214 Pa. 568.

Opinion by Mr. Justice Frazer, June 26, 1920:

Plaintiff contracted to provide materials and perform the work necessary in the construction of an eight-story building situate in the City of Philadelphia, in accordance with plans and specifications prepared by the Hoffman Company, architect, and approved by Smith, Hinchman & Grylls, supervising architects. During the progress of the work extras in the form of labor and materials were required and delays occurred, resulting in additional cost incident to the completion of the building;

to recover for these items, and an unpaid balance on the contract, this action was commenced. The total amount claimed was $149,813.46, made up of an unpaid balance on the contract price, in accordance with certificates of the architects, amounting to $34,290.09; a claim of $57,-465.17 for delay alleged to have been caused through the fault of the owner; $13,606.05 for extra work; and $44,-452.15 as consequential damages to plaintiff by reason of increased cost due to delay in completion of the work, for which delay it is alleged defendant was responsible. An affidavit of defense was filed raising a question of law as to the sufficiency of the statement of claim and, after argument and reargument of the rule for judgment, the court below entered judgment in plaintiff's favor for the unpaid balance of $34,290.09, with leave to defendant to file an affidavit of defense to the merits of the item of $57,465.17, and judgment in favor of defendant as to the claims for extra work and consequential damages. Plaintiff appealed and the only questions before this court refer to the correctness of the lower court's conclusion with respect to the items of $13,-606.05 and $44,452.15.

The claim of $13,606.05 is made up of two items which must necessarily be considered separately. The first is for $12,656.05, representing additional outlay incident to the construction of extra footings for the foundation of the building, rendered necessary by an order of the building inspector of the city, to the effect that the soil at the depth specified in the plans was of insufficient character to support the weight of the building, and directing that the excavation be deepened and the foundation and columns increased in size. To defeat this claim, as a matter of law, defendant asserts article VI of the contract provides that "No alterations or additions, or anything that shall put additional cost or charge upon the owner shall be made in or to the work except upon the written order of the architects countersigned by the treasurer of the owner," and avers such order was not

given; that under article III of the contract the decision of the architects "as to the true construction and meaning of the drawings and specifications shall be final" and that the statement disclosed the architects had rejected plaintiff's claim; and further that the extra footings were required because the plans and specifications could not be carried out as contemplated, which circumstance imposed no liability upon defendant for the cost of the extra work, as the contract provided all work should be done and materials furnished in accordance with law and the city ordinances and should comply with all "building laws and orders of the authorities." Defendant also contended the requirement of extra footings was an unforeseen contingency which, under the contract and the law, was assumed by plaintiff.

We need not consider the question of the sufficiency of the averment of waiver of the provision that extra work would not be paid for by the owner unless upon the written order of the architects countersigned by the treasurer, in so far as it applies to extra footings, for the reason the additional work was made necessary by the order of a public official, acting within the police power of the city and out of consideration for the public safety, and was not a matter as to which either the owner of the building or the contractors or architects could exercise an option. The requirement of the official was final and conclusive on all parties, regardless of whether or not an order for the change was signed by the architects: Cunningham v. Fourth Baptist Church, 159 Pa. 620. Neither is there merit in the contention that the clause, making final the decision of the architects as to the true construction and meaning of the drawings and specifications, must govern the question raised, as this is not a question of construing the meaning of the drawings and specifications, but one relating to the effect of an order of the building inspector upon the contract between the parties. The law recognizes the right of parties to contracts to stipulate the method of arbitrating

questions arising between them in the performance of their agreement, but, since such privilege is in derogation of the common law right of trial by jury, it will not be extended beyond the express terms agreed upon between the parties, and the burden of showing that a particular question is within the arbitration clause rests upon the party asserting it: Hunn v. Penna. Ins. for the Blind, 221 Pa. 403, 411. The question under discussion does not appear to be within the scope of matters to be construed by the architects, and in fact defendant seems to concede the correctness of this view and bases its argument mainly upon the ground that, under the contract and the law applicable to its provisions, there was no liability imposed upon it to assume the cost of construction of the extra footings.

It is conceded that, under the common law rule, a contractor who undertakes an entire contract for erecting a building is presumed, in absence of an express provision to the contrary, to have assumed the risk of unforeseen contingencies arising during the course of the work, unless performance is rendered impossible by the act of God, the law, or the other party: Miller v. Homeopathic Hospital, 243 Pa. 502. Under this rule there is no implied warranty of the sufficiency of the soil to support the building to be erected, and the contractor assumes the risk of a loss incident to such defectiveness. It is contended, however, the contract in this case contains provisions bringing it within the exception to the above rule, and in support of that contention plaintiff relies mainly on Miller v. Homeopathic Hospital, supra. Plaintiff there agreed to furnish the materials and labor in the construction of a building in accordance with plans and specifications, and before its completion the foundations gave way necessitating the rebuilding of a portion of the wall on more substantial footings. The court held the contractor was entitled to recover the additional expenses of enlarging the footings and reconstructing the wall. The contract in that case contained the usual

provisions of the standard printed form of contracts generally followed in such undertakings, many of them being almost identical with pertinent provisions of the present contract. There are, however, points of distinction between that case and this considerably affecting the weight of the former as a precedent. The architect there was plainly the agent of the owner, and the contractor, in addition to other work, was required to build a platform for the purpose of making tests if directed to do so by the architect. This requirement necessarily implied that the contractor was under no further duty to make tests and personally determine the sufficiency of the bearing surface of the soil. The court there found it was the duty of the architect, as agent of the owner, to make the soil tests and prepare necessary changes in the plans of the footings, as specified, where found to be insufficient. In the present case the contract contains no express provision relating to soil tests; it does, nevertheless, require the contractor to examine the site of the building for full knowledge of the conditions of the work to be done, as he would be expected "to include all work and materials necessary to complete the building in accordance with these plans and specifications" and also that the architects were "not to represent either party, but are to act independently." It thus appears both elements which formed the basis of the decision in Miller v. Homeopathic Hospital are lacking here. While this court did say in that case that the "rule of impossibility of completion for which the contractor is not responsible" might be invoked, that language was not the basis of the decision, nor was it necessary to the decision. Murphy v. Liberty National Bank, 184 Pa. 208, is also distinguishable for the reason in that case the defect rendering the construction impossible was in the plan of the building and not in the sufficiency of the soil to support the structure.

Aside from the general stipulations above referred to, the only clause directly bearing upon the question of

excavation is a provision in the specifications requiring the contractor to "excavate to necessary depth for cellar and boiler room floors also for all foundations and areaways, elevator pits, sump pits and column footings, etc., assuming good bearing soil is to be found at a depth of five feet below the main basement and boiler room floor levels." Plaintiff's contention is that the last quoted clause constitutes an implied warranty that the depth of five feet would be sufficient to support the foundations, and, if not, additional excavation should be treated as extra work. We must assume the parties had a definite purpose in view in using the language in question. If nothing more was intended than they believed such bearing surface would be found at the depth indicated but, if not, the depth must be determined by the circumstances, the last part of the clause is meaningless and unnecessary. In that case the stipulation might well have ended with the first clause providing for excavation "to necessary depth." By use of the additional words, however, the contractor was assured that, in estimating the work, he need not figure on the possible expense of excavating beyond the depth stated, but that if a further depth was required additional pay for such extra work might be expected. This view is supported by the further provision requiring bidders to examine the site and become familiar with the work and the ground "as cost of excavation must be included in the estimate and no extras will be allowed for rock excavation." The last clause seems to imply that its absence from the contract would indicate the parties contemplated payment for extra work made necessary by the unexpected presence of rock. Reasoning by analogy, it is logical to conclude they contemplate extra payment for excavations made necessary by insufficiency of the soil at the depth stated to support footings, where the contract expressly permitted it to be assumed bearing soil would be found at a designated depth. The question presented is a close one, but after consideration of

the various provisions in the contract and specifications, we are of opinion plaintiff is entitled to recover for this item of extra expense, unless a defense on other grounds is presented at the trial of the case.

The remainder of the claim for extras is for the sum of $950, for installing electric cables to convey current from the generators to the fire pumps. Plaintiff averred that from time to time extra work and materials were ordered by defendant for which the latter agreed to pay, and that a number of these orders were in writing while others were merely verbal, but in no instance were they countersigned by the treasurer of the owner as required by the contract; nevertheless they "were recognized as valid and in some instances said extras have been paid for." This declaration is followed by an averment that the provision requiring a written order, countersigned by the treasurer of the owner, "was waived by the parties." It is then further declared that among the extras required by plaintiff but for which no written order was obtained were the materials necessary for installation of electric cables and that plaintiff "duly complied with said order and installed said cables; the cost thereof, which was the reasonable market value thereof, was $950."

The contract provided that extra work should not be paid for except on written order from the architects, countersigned by the owner, and also that no provision of the contract or specifications "can be waived by either party unless such waiver is expressed in writing and duly signed." There would seem to be no valid legal reason, however, for holding this provision could not in turn be waived if the parties saw fit to do so: Bartlett v. Stanchfield, 148 Mass. 394; Headley v. Cavileer, 82 N. J. L. 635. The averments above quoted sufficiently comply with the Practice Act of 1915, requiring the statement of claim to be "as brief as the nature of the case will admit" and to "contain and contain only a statement in a concise and summary form of the material facts on

which the party pleading relies......but not the evidence by which they are to be proved." If the provision in question was waived by defendant, it is not a fatal defect on demurrer that the statement fails to state the time of waiver, so long as it appears to have been made before the work and materials were furnished; also the averment that the waiver was agreed to by defendant is likewise sufficient on demurrer, and would be amply supported by proof to the effect it was made by an officer of defendant or other persons duly authorized to act.

With respect to the claim of $44,452.15 for consequential damages, resulting from delay in the work alleged to have been due to defendant's default, plaintiff concedes that all but three items amounting to $3,233.10 are insufficiently averred and that the court below would have been justified in entering judgment thereon for defendant. It is argued, however, that as to the three items to be mentioned, sufficient information is given to sustain the claim. The first is a claim for the "amount paid by plaintiff for lumber for concrete forms required in excess of the lumber that would have been required for that purpose if the building could have been constructed as contemplated by the contract." No details are given except the number of square feet and the price per thousand. The claim is based on "the amount paid by plaintiff." It is asserted the amount was "the fair and reasonable market prices" and while the kind or quality of the lumber is not set forth the statement avers it was "for concrete forms" and this would seem to be sufficient information to enable defendant to present a defense to the item, if any existed. The next item for $1,000 is "amount paid by plaintiff for extra hauling, loading and unloading seven hundred tons of steel at $3.75, which expenditure was rendered necessary by reason of the delay above mentioned." While the general averment in the beginning of paragraph 17, that the sums paid were the fair and reasonable market price,

must be held as applying to this item, there is no statement of the place from whence the hauling was made, the number of laborers engaged, the time of their employment, or the wages paid them and no other data given from which it might be ascertained whether or not the price was, in fact, a reasonable one. On the contrary, the entire amount is stated in a lump sum. The same criticism applies to the remaining amount of $1,000, representing the "amount paid by plaintiff for having delivery postponed of rods to be used in concrete." This claim is somewhat unusual in character and for that reason should be more specific and give information as to why a mere delay or postponement of delivery required the expenditure of the sum of $1,000.

The judgment must be modified as indicated herein and the record is remitted with direction to the lower court to enter judgment in accordance with this opinion.