Parkes et ux. *v.* Opfermann, Appellant.

Argued November 16, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Walter W. Riehl,* for appellant.

*Leo J. Kelly, Jr.,* for appellees.

OPINION BY WOODSIDE, J., January 17, 1956:

These are suits in assumpsit brought by Wesley J. Parkes and wife and Walter Parkes and wife against Frank J. Opfermann, a building contractor, who had contracted in writing with each couple to construct identical houses in accordance with written specifications. The cases were consolidated and tried as one.

The defendant contractor has appealed from the refusal of the lower court to grant new trials after jury verdicts in favor of the plaintiffs in each case.

The appellant contends that the lower court abused its discretion in not granting a new trial on the grounds that (1) the verdicts were not warranted by the evidence and (2) they were excessive.

The plaintiffs, having verdicts in their favor, must be given the benefit of every fact and inference of fact which may reasonably be deduced from the evidence, and the testimony must be read in the light most favorable to them. *Christ v. Hill Metal & Roofing Company*, 314 Pa. 375, 171 A. 607 (1934).

The plaintiffs averred that approximately four months after the houses had been constructed by the defendant and occupied by the plaintiffs defects developed which were the result of the defendant's failure to meet certain specifications in the contracts.

The plaintiffs relied on the testimony of an expert witness, a graduate licensed engineer. The defendant contractor relied on his own testimony and that of two sub-contractors who had done the work.

The plaintiffs testified that both the basement and garage floors in each house cracked, and upon removing a piece of concrete from the basement floors it was discovered that the floors were only one and a half to two inches thick. The contract provided that these floors should be three inches in thickness. The garage floors were two and a half inches thick instead of four inches

as provided in the contracts. The plaintiffs' expert witness testified that the floors did not meet specifications and that the cost of replacing the basement and garage floors in each house would be $840.

On the other hand, the defendant averred that the basement and garage floors were installed according to specifications. The sub-contractor corroborated the defendant. He further testified that the concrete floors in each house could be replaced at a cost of $290.

The defendant further contended that the evidence submitted by each of the plaintiffs in regard to the thickness of the concrete installed in the basement and garage floors was insufficient, as only two samples were taken in the basement and one in the garage. This was sufficient evidence to go to the jury. There was a total of six places in the two premises where the depth of concrete was determined and if it was found that in each of these widely scattered spots there was at least one inch less concrete than the contract provided, the jury had a right to infer that the depth of concrete placed in the basements and garages did not meet specifications.

The engineer testified that the septic tank system on the premises of each was improperly installed in that sewage was permitted to seep through the leeching beds. He outlined the proper method which should have been used in installing the septic tanks and said that it would cost $400 to properly install a system which would be free of the defects.

The defendant testified that the septic systems were installed in substantial compliance with the specifications.

Plaintiff Wesley Parkes testified that there was a bulge in the kitchen floor of his home which the engineer averred would cost $100 to fix. The defendant

testified that the floor bulge could be corrected for an expenditure of $3.

The question of damages was for the determination of the jury which had the opportunity to hear the testimony of the adverse parties and their witnesses on each of the items involved.

The jury accepted the testimony of the plaintiffs and their witnesses and awarded Walter Parkes and wife the sum of $1340. and Wesley J. Parkes and wife the sum of $1240.

There was evidence that the reasonable cost of correcting the defective construction so that it would comply with the contract was the sum which the jury awarded. The question of whether correcting the defective construction would involve such unreasonable economic waste that the measure of damages would be, not the cost of correcting the defect, but the difference between the value of the premises built according to contract and the value of the premises as received by plaintiffs was not raised either at the trial or in the court below and is not before us here. See Restatement of the Law of Contracts Vol. 1, Sec. 346 (1) (a).

As there was evidence to sustain these verdicts they will not be set aside on the ground that the damages are excessive. *Morris v. Zinn,* 286 Pa. 281, 133 A. 507 (1926) ; *Miller v. Coca Cola Bottling Works,* 297 Pa. 41, 146 A. 134 (1929).

Initially, it is the duty of the trial court to control the amount of the verdict rendered by the jury. An appellate court will reverse the trial court for approving the amount of the verdict only where this course is imperative, and where the verdict is so grossly excessive that sustaining it evidences such a clear abuse of discretion on the part of the trial court as shocks the appellate court's sense of justice. *King v. Equitable Gas*

*Co.,* 307 Pa. 287, 161 A. 65 (1932) ; *Bockstoce v. Pittsburgh Rwys. Co.,* 159 Pa. Superior Ct. 237, 48 A. 2d 126 (1946) ; *Contillo v. Pittsburgh,* 158 Pa. Superior Ct. 524, 45 A. 2d 366 (1946).

Judgments affirmed.