## Pickens v. Cunningham

*David A. Murdoch,* for plaintiff.
*W. Allen Dill,* for defendant.

ACKER, *J.,* September 21, 1981 — This matter comes before the court upon an order for reargument upon preliminary objections of defendant to plaintiff's complaint in assumpsit. This court en-

tered an order upon the preliminary objections previously reserving decision concerning proper measure of damages for a pre-trial conference. The attorneys desire, however, to have a determination of the measure of damages prior to a pre-trial conference. Hence, this court granted the request for reargument. To assist in the determination of the issue of the proper measure of damages, certain exhibits have been received by the court. Exhibit "B" is the plan referred to in the contract for the construction of the building. The latter is captioned Exhibit "A" and is attached to the complaint. Plaintiff contends that the residence as actually constructed is 109.5 square feet smaller than the dimensions of the house contracted for; that the garage, living room, bathroom and bedroom are undersized, as compared to the size as shown on defendant's blueprint drawing; that there is no half-bath as shown on the blueprint drawing; that there are no glass panels beside the front door as shown on the blueprint drawing; and that the garage door is undersized. The contract for construction of the residence called for a total contract price of $43,900. In order to correct the claimed errors as set forth above, plaintiff desires damages of $35,200. In addition, plaintiff claims damages due to seepage in the basement and other work which is claimed was done in an unworkmanlike manner which brings the total claim of plaintiff to $45,368. This is, of course, in excess of the entire contract price.

The applicable contract language provides, "Home to be built according to prints designed by Contractor. Size of Dwelling Approximately 26' 8" x 69' x 32' 6" x 36' including garage. House consists of kitchen, dining room, rec. room, living room, three bedrooms, bath and a half."

By Exhibit "D", which is an estimate and contract of Robert J. Foltz, General Contractor, supplied to plaintiff, the basic problem is described by comparing the construction blueprint outside dimension of 32′6″ to the dimensions required to accommodate the room size as set forth in the drawing produced by defendant. To do so the foundation should have been outside to outside 36′8″. By measurement it is claimed to be 33′8″. Due to this error, according to Foltz, the house is short 109-½ square feet and did not contain a half bath. Folz conjectures in his report that the contractor had to realize there was an error when he laid out the building on the ground before the basement was dug. Establishment of that conclusion at trial may well expand the measure of damages for plaintiff as noted hereafter. Defendant addresses two questions which are here discussed.

I. If There is an Inconsistency Between the Contract and the Blueprints as to the Width of the House Which Prevails?

Plaintiff does not regard that there is any inconsistency between the contract and the plan. To take that view is somewhat an over-simplification for although the contract provides that the wall in issue, being the north wall, is to be 32′6″ and the plan shows it to be 32′6″, when the room size of the various rooms making up the residence are considered by totaling their length, it is seen that the north wall foundation would have to be 36′8″. Although the actual outside wall as constructed is 33′8″, being 1′2″ over the blueprint, it is 3′ short of what was required to meet the dimensions of the rooms comprising the house as set forth in the same sketch or plan prepared by defendant-contractor.

The case law in Pennsylvania, although sparse, appears to follow a general rule that a contractor who builds according to his own plans should be liable for the defects in his work: Filbert v. Philadelphia, 181 Pa. 530, 37 Atl. 545 (1897); Canuso v. Philadelphia, 326 Pa. 302, 192 Atl. 133 (1937); and Miller v. Homeopathic Hospital, 243 Pa. 502, 90 Atl. 394 (1914).

At least as to other jurisdictions than Pennsylvania, the general rule would appear to be that a contract prevails over the specifications or plans where there is a conflict: Barraque v. Neff, 202 La. 360, 11 So. 2d 697 (1942). In McConnell v. Gordon Construction Co., 105 Wash. 659, 178 P. 823 (1919), it was held that if either party to a building contract agrees to furnish and does furnish the plans for the building, he thereby guarantees their sufficiency for the purpose.

In Jim Mahoney, Inc., v. Galokee Corporation, 214 Kan. 754, 522 P. 2d 428 (1974), the building contract incorporated the plans, drawings and specifications by reference. The written contract provided that the parking lot would have a gravel base. A Schematic drawing indicated that the driveways and parking lot would be covered with asphalt. It was held that the specification served the purpose of explaining and amplifying but not adding to the provisions of the contract. In Brown-Randolph Co. v. Gude, 151 Ga. 281, 106 S.E. 161 (1921), it was held that where a conflict exists between a building contract and the specifications that the former prevails. For the same effect, see Gardner v. City of Englewood, 131 Colo. 210, 282 P. 2d 1084 (1955) and McGarry Contracting Co. v. Board of Education of City of New York, 284 N.Y. 218, 30 N.E. 2d 482 (1940); Warren v. Gray, 90 Ga. App. 398, 83 S.E. 2d 86 (1954).

It is defendant's position that the contract called for a north wall of 32′6″ in length and the drawing of defendant shows that wall being 32′6″ in length. Therefore, plaintiff got what she contracted for. Plaintiff's contention is that if you add the dimensions of the various rooms comprising the north wall, it is readily apparent there was insufficient area but in addition even if the contract has been fulfilled as to dimensions by taking defendant's position at the best the half bath as provided in the drawings was left out due to lack of space. Defendant relies on Cek v. Karinch, 11 Lebanon 371 (1967). In that case, plaintiff had contracted with defendant for construction of a dwelling. The contract incorporated by reference a set of specifications and a set of blueprints both prepared by defendant. The furnished home met the requirements of the blueprints but not the specifications. The court made a distinction between blueprints or plans and specifications, pointing out that the plans are to illustrate or explain the work which is to be done while the specifications are to provide the kind, quality and quantity of work to be done. The details meant the time and manner of construction without which the contract would be incomplete and ineffective. This case is inapplicable for in the instant case there were no specifications separate from the contract nor could plaintiff determine any of the details as to how her house was laid out or the size of the rooms without the plan which was specifically referred to and incorporated into the contract. Only by reading the plans can the owner gain a concept of how large each room is to be as well as the layout and location of the rooms in relation to each other.

Wherefore, we believe Cek v. Karinch to be inapposite. It is true that normally plans are not in the

same sense or to the same extent to be considered an integral part of the contract as are the specifications: Hartley-Zeigler v. Bacon, 251 Pa. 87, 96 Atl. 257 (1915). But in this case the plans were specifically incorporated into the contract by its language even before setting forth the dimensions of the house for it states that the house is to be built "according to prints designed by contractor."

The jury will be required to determine the intention of the parties: Robert F. Felte, Inc., v. White, 451 Pa. 137, 302 A. 2d 347 (1973). In doing so the jury must take into account the surrounding circumstances, the situations of the parties, the objects they had in view, and the nature of the subject matter of the agreement: Edwin T. Schoettle Co. Appeal, 390 Pa. 365, 134 A. 2d 908 (1957). The primary rule of construction of an agreement is that the intent of the parties is controlling. Of course, if this can be determined by the words used which are clear and unambiguous the intention must be detemined from the agreement alone: Kennedy v. Erkman, 389 Pa. 651, 133 A. 2d 550 (1957). But we do not believe, in the instant case, the intention is at all clear from a mere reading of the contract without consideration of the plans. It is beyond controversy that a written document must be construed most strongly against the party drafting it: Heidt v. Aughenbaugh Coal Co., 406 Pa. 188, 176 A. 2d 400 (1962). Following these rules of construction, we will submit to the jury whether the dimensions as appearing on the north side of the Robert R. Cummings Contractor Plan of 32′6″ or the total dimensions of the plan which are 3′ greater were intended by the parties in their contract.

What is the Measure of Damages for Defects in

Finished Construction Resulting from a Defect in the Plans?

In viewing this issue, it is assumed, arguendo, that defendant cannot establish that plaintiff appreciated the error in the plans prior to the construction being advanced beyond the point where it was economically unfeasible to rectify the situation. This assumption is contrary to that of defendant's expert and is advanced only to state the principals of law in some logical order. As a general rule, the measure of damages is the cost of correcting the defect or completing the omissions rather than the difference in value between what ought to have been done in the performance of the contract and what has been done where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to results to be obtained: 13 Am.Jur. 2d, Building §79.

The Restatement, Contracts, §346(1)(a), provides that for a breach by one who has contracted to construct a specified product, the other can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made . . . determined as follows: (a) For defective or unfinished construction, he can get judgment for either; (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by plaintiff, if construction and completion in accordance with the contract would involve unreasonable

economic waste. The Restatement Comment to the above Section suggests that sometimes defects in a material structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. It is noted that the law does not require damages to be measured by a method requiring such economic waste. The court does have a duty to determine as a matter of law whether there has been a substantial variance not authorized by the owner and made without his knowledge or assent: Pressy v. McCornak, 235 Pa. 443, 84 Atl. 427 (1912). Further, that where a party acting honestly and intending to fulfill his contract performs it substantially but fails in some comparatively unimportant particular the other party will not be permitted to enjoy the fruits of such imperfect performance without paying a fair consideration according to the contract but receive credit for any loss or inconvenience suffered: Smith v. Cunningham Piano Co., 239 Pa. 496, 86 Atl. 1067 (1913). The general rule is that the measure of damages in matters of this nature is the difference between the value between what is tendered or performed and what is due as performed under the contract and this may consist of the amount required to remedy the defect: Brourman v. Bova, 198 Pa. Superior Ct. 279, 182 A. 2d 245 (1962).

Particular defects may be required to be redone by new construction such as the replacement of a roof in Bloomsburg Mills, Inc., v. Sordoni Construction Co., 401 Pa. 358, 164 A. 2d 201 (1960). On the other hand, in Parkes v. Opfermann, 180 Pa. Superior Ct. 184, 119 A. 2d 624 (1956), it was held that it was for the jury as to the proper measure of damages where a concrete floor in a basement and garage which cracked and did not, it is claimed, meet the specifications.

We conclude that if contractor-defendant did not appreciate his error until he was substantially into the construction to such an extent as to make it economically unfeasible to return and rebuild the residence, he will not be obligated to pay the cost of reconstruction. He will be obligated to pay, if the jury concludes that the intent of the parties was to have rooms of the dimensions as shown on defendant's sketch contrary to the overall length of the north wall, the difference in the value of the house, had it been of the dimensions as indicated on the sketch, as to the individual rooms, as opposed to the actual dimensions of the house. On the other hand, if defendant knew that the rooms were not going to meet the dimensions of his plan and the jury concludes he was obligated to construct the house to the room dimensions before the construction reached the stage where it was not economically feasible to rectify the situation, he may be required to pay the damages prayed for by plaintiff.

The previous order entered by this court concerning the preliminary objections is reaffirmed.

## ORDER

And now, September 22, 1981, it is hereby ordered and decreed that the previous order of November 5, 1980, concerning the preliminary objections is reaffirmed.

It is further ordered and decreed that the issue of whether the parties intended the interior dimensions as shown in the sketch of defendant to represent the actual construction as opposed to the exterior dimensions shown on the sketch as to the north wall will be submitted to the jury. It will be likewise submitted to the jury as to whether defendant-contractor knew of his failure to meet the dimen-

sions of the interior rooms prior to the construction having progressed to such a point that it would be economically unfeasible to reconstruct the residence in accordance with the interior dimensions. If not, the jury will be requested to determine the damages based on the value of the residence as it would have been had the residence been constructed in accordance with the interior dimensions as opposed to the actual value of the premises. In the event that the contractor did know that the contract called for the interior dimension through the plan and that he built the residence or continued to build it after gaining such knowledge despite the interior dimensions not being met, the jury will be given the opportunity to return a verdict based upon the cost of reconstruction of the house sufficient to meet the interior dimensions as set forth in the sketch.