## LIVELY *v.* THE STATE.

No. 10079. MARCH 14, 1934.

694

*Walter M. Archer* and *Robert McGinley*, for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Boykin, solicitor-general, B. D. Murphy, J. T. Goree, J. W. LeCraw,* and *J. H. Hudson,* contra.

HUTCHESON, J. Miley Lively was indicted for the murder of Rethey Kell. He was tried, convicted, and sentenced to be electrocuted. His motion for new trial was overruled, and he excepted.

■ Ground 1 of the amendment to the motion for new trial assigns error because the court allowed a witness, Lucile Barrett, to testify, she being of tender years. The assignment of error is, "Because the following material evidence was illegally admitted by the court to the jury, to wit:" and then follow several pages of questions by the court and answers by the witness, looking to the qualification of the witness to testify. Apparently there was no objection by counsel for the defendant to the competency of the witness, or to the testimony as given by her; and the assignment of error presents no question for this court to pass on. *Polk* v. *State,* 18 *Ga. App.* 324 (5) (89 S. E. 437); *McDow* v. *State,* 176 *Ga.* 764 (3) (168 S. E. 869).

■ Special ground 2 complains because Dixie Hood, a witness for the State, when the question was asked: "When you saw him cutting his own throat, what did you do?" testified: "I reckon he had done cut his mother-in-law's throat last. I don't know which one he cut first." The objection urged was, "We object to what the witness reckons." If the meaning of the objection is that the testimony was a conclusion of the witness, it does not appear that the testimony could have either benefited or harmed the defendant. Two people were cut with a razor by the defendant, and the witness was being asked which was cut first. It could make no material difference what was the order of the cutting. The ground of objection is without merit.

■ The third assignment of error is on the ground that the court illegally admitted in evidence a razor, because it had not been proved that it was the razor that was used in the commission of the crime. The razor was submitted to several witnesses, and they testified that it looked like the razor which the defendant used in the commission of the crime. Dixie Hood testified: "I could not

say that this is the same razor. It looks just like that one. I saw the razor there. It had a kind of brown looking handle or celluloid. It looked like a brown celluloid handle to me." Witness Englebert identified the razor as being the one turned over to the police authorities at the scene of the homicide. It appears without dispute that the crime was committed with a razor, and it would make no material difference whether or not the weapon it was sought to identify was the particular razor with which the homicide was committed. The identification was sufficient to authorize the jury to decide, under the evidence relative to identification, whether or not it was the identical weapon used by the defendant.

■ Ground 4 assigns error because, in his examination of the witness Lucile Barrett, the judge stated within the hearing of the jury: "Gentlemen, of course, she is rather young, rather undeveloped. At the same time, I believe the jury can see her, and they have heard her responses; and I will let her tell whatever you desire to ask her before the jury, and they can put whatever weight they see fit to give it on her testimony, what she says." The objection is that this statement expressed an opinion by the court that the witness would be permitted to tell whatever the State desired to ask her and such would be competent for the jury's consideration; that such remarks were an expression of opinion and conclusion by the court, and tended to prejudice this movant in the minds of the jury and give undue weight upon such testimony. The objection is without merit. There was no objection to any portion of the testimony by this witness, and the statement by the court that the jury "can put whatever weight they see fit to give it on her testimony, what she says," was substantially what the court tells every jury in such a case, that the jury gives to the testimony just such weight as they think it entitled.

■ Ground 5 assigns error on the refusal of the court to allow Jessie Lively to testify. It appears without dispute that Jessie Lively was the wife of the defendant, and therefore she was an incompetent witness for him. The record discloses that he was married in 1903 to Jessie Sweat (Jessie Lively) ; he was never divorced from this wife, but lived with her about fourteen years, during which period they had seven children. He then left her, and began to live with the woman whom he killed at the same time he killed Mrs. Kell (for which latter homicide he was on trial).

■ In the sixth ground plaintiff in error sets out the entire charge to the jury, and then assigns error (a) because the court omitted to charge that to the indictment the defendant entered a plea of not guilty, forming the issue which they were to try; (b) because the court omitted to instruct the jury that the burden rested upon the State to prove each and every material allegation in the indictment beyond a reasonable doubt; (c) because the court omitted to instruct the jury as to the credibility of witnesses and the weight to be given their testimony, instructing them essentially that the credibility of witnesses was a question for the jury to determine from the appearance of the witness on the stand, his interest or want of interest in the outcome of the case, his temper, feeling or bias, if any was shown, his demeanor while testifying, his apparent intelligence or lack of intelligence, his means of information, etc.; (d) because the court erred in omitting to charge the jury on an essential element of the crime charged in the indictment, to wit, intent is an essential element of the offense charged in the indictment; and if the act and consequence be shown, and it appears that the party so charged in the indictment was of such unsound mind that he was incapable of having intent, a crime would not exist; that should the jury so believe this movant to have been of unsound mind at the time of the commission of the offense charged in the indictment or prior thereto, they should acquit; and that if one be of unsound mind, he is incapable of criminal intent, a necessary element in the offense charged in the indictment, and criminal intent can not be charged to one of unsound mind; (e) because the court omitted to charge that before they could find the movant guilty of the offense charged, there must be a union of joint operation of action and intention; (f) because the court omitted to charge that the evidence of insanity could be considered with the other evidence of the case, in determining whether or not the defendant was guilty beyond a reasonable doubt; and that if in considering all the evidence, including the evidence of insanity, the jury entertained a reasonable doubt as to the defendant's guilt, they should acquit him.

The court charged the law of insanity as embodied in the Penal Code (1910), §§ 33, 35; also charged the law with reference to reasonable doubt; and further charged: "After all, gentlemen, as to whether or not under the definitions of insanity, definitions of a

person that is sane or insane, whether or not he is criminally responsible, is a question for this jury to determine under all the facts and circumstances in the case." In the absence of a proper and timely request for a fuller charge on this subject, the charge as given was sufficient to cover the law of insanity as applied to this case. It is not error to fail to charge the law with reference to the credibility of the witnesses, in the absence of an appropriate request therefor. *Darden* v. *State*, 171 *Ga.* 160 (6) (155 S. E. 38). Error is assigned because of the omission to charge that the defendant entered a plea of not guilty, forming the issue which the jury was to try. While the judge did not charge in this exact language, he did charge: "Now this defendant enters upon his trial with the presumption of innocence in his favor, and that presumption remains with him like a proved fact until overcome by proof which satisfies your minds beyond a reasonable doubt as to his guilt, a reasonable doubt being such doubt as an honest and conscientious juror would have in the search after truth, and not fancy or a guess as to the possibility of the innocence of the accused." And further: "A verdict of not guilty in this case, gentlemen, would mean that the defendant would be discharged without any punishment or confinement as far as this case is concerned. That would end the case." The court further gave to the jury the various forms of verdict which they could return. The failure to charge specifically that the defendant entered a plea of not guilty could not have prejudiced the defendant; for the jury readily understood that the defendant did not plead guilty, and the charge as just quoted was sufficient to put the jury on notice of the rights of the defendant with reference to the presumption of innocence.

The seventh ground alleges error in the charge of the court, to wit, "This defendant, Miley Lively, is charged in this bill of indictment with the offense of murder in the killing of Rethey Kell," the errors assigned being that the charge "is ambiguous, confusing, and misleading, and expresses an opinion by the court that Miley Lively had killed Rethey Kell, and the bill of indictment charges that the killing was murder. In so defining the killing as murder, the jury's consideration was eliminated from any lesser degrees of homicide, as well as the question of whether or not Rethey Kell may have met death at the hands of some one other than this defendant;" and the court did not charge that the defendant entered

a plea of not guilty. The only grade of homicide involved under the evidence was murder, and the only defense set up was that of insanity. This ground is without merit.

■ The eighth ground assigns error on the following charge: "I charge you, gentlemen, that when the State proves that the accused killed the deceased with a weapon likely to produce death in the way and manner used, a prima facie case of murder is made out; and unless there is some evidence to show the contrary, the presumption is that it is murder. Of course, gentlemen, this presumption may be rebutted." This charge is not subject to the criticism that (a) it is unsound as an abstract proposition of law; (b) that the court erred in failing to clarify the instruction by charging that a prima facie case of murder is made out unless alleviating or mitigating circumstances are shown; and that if insanity is shown by a preponderance of the evidence, that insanity would be a mitigating or alleviating circumstance; (c) that the charge prejudiced the rights of the defendant, in that it illegally placed on him the presumption of guilt instead of the presumption of innocence; (d) that the charge prejudiced the rights of the defendant in placing on him the burden of rebutting the presumption of murder; (e) that the charge expressed or intimated an opinion by the court that the defendant was guilty of the offense of murder, and that the State had made out a prima facie case of murder, and that unless the defendant could rebut this presumption, then he should be convicted of the offense of murder; (f) that the charge was erroneous and hurtful to the defendant, in that the judge charged the jury that "when the State proves that the accused killed the deceased with a weapon likely to produce death," etc., when he should have charged that "if the State proves that the accused killed the deceased with a weapon likely to produce death," etc.; (g) that said charge was erroneous and hurtful to this defendant, in that the court did not charge in connection therewith the amount or weight of evidence necessary to rebut the presumption of murder. See, in this connection, *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934); *Turner* v. *State,* 139 *Ga.* 593 (3) (77 S. E. 828). The defendant made no statement to the jury, but set up the defense of insanity. The court charged the jury on the subject of insanity; and there being no appropriate request for any further or fuller instruction on that subject, the criticisms of the charge are without merit.

■ Ground 9 assigns error on the following instruction: "I charge you that when one sets up the defense of insanity, the burden is on him to prove that defense to the reasonable satisfaction of the jury. When one acts to void deed upon the ground of insanity, the burden is upon him to establish insanity at the time the deed was executed; but if the insanity was proved previous to that time, the presumption is that it continued down to the making of the deed or commission of the act. As I have charged you, the burden is upon the accused to establish insanity by a preponderance of the evidence. The presumption is that he is sane." In *Allams* v. *State,* 123 *Ga.* 500 (51 S. E. 506), it was held: "Where the accused, on trial for murder, relied on the defense of insanity at the time of the homicide, it was not error to instruct the jury that the burden was upon him to show 'that at the time of the killing he was not of sound memory and discretion. He must show this, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury, by a preponderance of the evidence.' *Beck* v. *State,* 76 *Ga.* 452 (7); *Keener* v. *State,* 97 *Ga.* 388 (3); *Minder* v. *State,* 113 *Ga.* 772" (39 S. E. 284). The charge in the instant case is similar to that in the *Allams* case. While the charge is somewhat confusing in the use of the language, "When one acts to void deed upon the ground of insanity, the burden is upon him to establish insanity at the time the deed was executed; but if the insanity was proved previous to that time, the presumption is that it continued down to the making of the deed or commission of the act," yet the jury knew that the validity of a deed to land was not in question, and were bound to know that the charge referred to the commission of the deed or act of the defendant in the case on trial; and the use of the language is not ground for a reversal of the case.

■ Ground 10 alleges error because the court charged the jury in the language of the code on murder and on express and implied malice, without any further explanatory remark or instruction in connection therewith. There was no appropriate request to elaborate the charge on these subjects; and it has been repeatedly held that it is not error to fail to elaborate a given charge that is legal and pertinent.

■ Ground 11 assigns error because the court charged as follows: "A verdict of not guilty in this case, gentlemen, would mean that the defendant would be discharged without any punishment or

confinement as far as this case is concerned. That would end the case." This charge is not subject to the criticism that it expressed an opinion as to the guilt of the accused, or that it served to place defendant's character in issue.

12. Ground 12 assigns error on the following instruction: "I charge you, if a man has sufficient reason to distinguish between right and wrong in relation to the particular act about to be committed, he is criminally responsible." It was held in *Hinson* v. *State,* 152 *Ga.* 243 (3) (109 S. E. 661): "The general rule in this State is that if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible," citing a number of cases, beginning with *Roberts* v. *State,* 3 *Ga.* 310 (3).

The accused killed the mother of the woman with whom he had been living, cutting her with a razor. There were a number of eyewitnesses to the killing. The defendant did not deny the homicide, but set up the defense of insanity at the time of its commission. On this question the evidence was conflicting; but the verdict of guilty was amply supported by evidence, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*