29123.  QUILLIAN, executor, *v.* TUCK *et al.*

DECIDED DECEMBER 5, 1941. REHEARING DENIED DECEMBER 18, 1941.

J. V. Poole, for plaintiff in error.

Erwin & Nix, Joe Quillian, contra.

STEPHENS, P. J. Claude Tuck and Claude Tuck Jr. petitioned the court of ordinary for a citation requiring Fletcher Quillian executor of Fletcher A. Quillian to make a settlement of the estate of Lena Tuck. In an amendment to this petition the petitioners alleged that the executor, F. A. Quillian, in May, 1921, collected $178.50 from W. T. Latham's estate for which there had been no accounting, and in April, 1922, that this executor collected from the same estate $87.50 for which there had been no accounting, and that in October, 1922, the same executor collected from the Latham estate $87.50 for which there had been no accounting, that in July, 1921, F. A. Quillian as executor of Lena Tuck collected from the Latham estate $1865 which had not been accounted for, that in April, 1918, this executor, F. A. Quillian, deducted from the assets of the estate of Lena Tuck $3400 which is denominated a "loan" in the paper termed a "return" which had

474

never been accounted for, that in September, 1917, this executor F. A. Quillian deducted from the assets of the Tuck estate $200 for which there has been no accounting, that in September, 1921, he deducted $130 which had not been accounted for, that in September, 1923, he deducted $1700 which had not been accounted for. The plaintiffs prayed that they recover from Fletcher Quillian, executor of Fletcher A. Quillian in his representative capacity as executor, the amounts above named with interest thereon. Fletcher A. Quillian Jr., (theretofore denominated Fletcher Quillian), as executor of the Tuck estate, filed a response admitting that his father, Fletcher A. Quillian, died while acting as executor of the Tuck estate, and denying that there were moneys and assets in his hands belonging to the estate not accounted for; that all the money handled by him and his father has been paid out except a small amount in bank in behalf of the estate of Lena Tuck, as shown and accounted for in a report furnished the plaintiffs during September, 1936, whereof a copy had been filed in the office of the ordinary; that during the time the estate was being administered it had been necessary to take over several pieces of real estate which had been put up as security for loans make by the Tuck estate, and at the time he furnished the movants the report he also delivered deeds to all the property held by him as executor of the Tuck estate, which deeds movants now have; that a loan of $2500 made by Fletcher A. Quillian executor of the Tuck estate has not been paid, and that during the year 1938 he, the respondent, as executor of the estate of Tuck, entered suit for a foreclosure and sale of the real estate, to which suit the defendant therein has filed a defense and the suit is now pending in the Fulton superior court; that the handling of the estate ran over a long period of time, and that the greater part of administering was done by his deceased father and was handled in a most businesslike manner; that all of the money and assets of the estate had been honestly and correctly accounted for by his father and by himself since taking charge of it at the death of his father. He prayed that the report heretofore filed be accepted as part of his final report and that he be allowed to complete his final report as soon as the foreclosure suit is disposed of. Here follows in the record what purports to be a list of bank deposits made by Quillian Sr. and by Quillian Jr. as representatives of the Tuck

estate and what purports to be a list of the amounts paid out by checks by Quillian Sr. executor and by Quillian Jr. executor. These lists do not appear to be exhibits, but seem to be copies of a statement filed in the court of ordinary in September, 1939, which is labeled "return." The statement or return appears to have been filed also in the superior court on September 11, 1940. In an amendment, the respondent alleged that his father, who died October 7, 1928, had filed in the court of ordinary returns giving a true statement of the estate up to July 1, 1920; that such returns are prima facie true; that he could not make a final report until the litigation affecting the estate was determined; and prayed that the two returns, one of his acts and one of his father's acts covering the period of time since the date of the last annual return July 1, 1920, be examined, filed, and recorded as respondent's report up to this date, and that he be allowed to file another and final report at the termination of the litigation. In an additional amendment the respondent alleged that his father paid out of his own funds $642.90 to the Beaver Dam drainage district for the Tuck estate, and that the $642.90 had not been repaid by the Tuck estate and was owing to the estate of F. A. Quillian. The jury found for the petitioners $5018.01. The respondent moved for a new trial on the general grounds and on several special grounds hereinafter considered. The court overruled the motion for new trial to which the respondent filed a bill of exceptions alleging and assigning error on the order overruling the motion upon all the grounds thereof.

In the present record the petitioners for citation for settlement are frequently called "movants" and the executor against whom the petition was filed is called "respondent." Hereinafter the petitioners will be called "petitioners" and the respondent will be called "defendant."

■ The first special ground of the motion for new trial complains that the court permitted the petitioners over the defendant's objections to introduce evidence before the defendant had been allowed to introduce his evidence in support of his report made as executor in response to the citation. He claims that this ruling was confusing to the jury and prejudicial to his interest. The record shows that after the introduction of the evidence the court charged the jury as follows: "In all cases the burden of proof

is upon some party. Usually in civil cases it is upon the plaintiff in the case, but in this case the burden is upon the respondent [defendant] to satisfy you by a preponderance of evidence of the correctness of any items with which he credits himself or with which he charges himself as executor of the estate, whether on his part or on the part of his predecessor in office."

The court also instructed the jury that when an executor has made annual returns which have been filed in the court of ordinary and approved by the court, that report, filed and approved by the ordinary, is prima facie correct, "and will be accepted by you as correct except where any one attacking any items of that report so approved, as is being done in this case, the movants attacking certain items of certain returns that have been made and approved by the court of ordinary, I want to charge you that they must not only satisfy you that these items are incorrect or wrong, but that the burden of proving their incorrectness is upon the movants," that "you will note in the pleadings several items of that kind which they seek to have corrected which they alleged are incorrect with which he has credited himself, on these returns which have been approved, but bear in mind that that burden is the same burden I have been talking to you about on the part of the movants when they attack any of these returns." The record shows that the items which the movants or petitioners attacked were all of them subsequent to the time when Quillian Sr. ceased to make returns, except two. One of these was in September, 1917, where it is said that the executor deducted $200 from the assets of the Tuck estate. In the annual return for 1917 this item does not appear. It is also claimed that in April, 1918, the executor deducted from the Tuck estate $3400 as a loan to F. A. Quillian. This item does not appear in the return of 1918. Consequently there were no items set up in the petitioners' pleadings which had been included in annual returns and approved by the ordinary. Besides, when this question arose, no returns, in fact nothing, had been put in evidence. There was no reason then for the court to put the burden of proof on the petitioners. These instructions being correct, and they are not questioned, the court should have allowed the respondent to open the case by introducing testimony before the petitioners were permitted to do so. It does not appear what order of argument was followed in the

trial. Ordinarily the party who opens the evidence will be given the opening and conclusion of the argument.

The defendant made his objection at the proper time, i. e., before any evidence was introduced. If he had not protested at that time, the right to open and conclude might have been waived. *Willingham* v. *Macon & Birmingham Ry. Co.*, 113 *Ga.* 374 (38 S. E. 843); *Northington* v. *Granade*, 118 *Ga.* 584 (2) (45 S. E. 447); *Taylor* v. *Brown*, 139 *Ga.* 797 (3) (77 S. E. 1062); *Jones* v. *Bank*, 20 *Ga. App.* 219 (92 S. E. 964).

Having preserved his right to claim the opening and conclusion of the argument it was afterwards incumbent on the defendant to claim that right when the argument stage of the trial was reached. It not appearing that the defendant was deprived of the opening and conclusion of the argument this ground of the motion for new trial is without merit. The irregularity allowed by the court in the introduction of evidence alone is not sufficient to require a new trial, it not appearing how the defendant was harmed by it in any degree. It was not error to overrule the first ground of the motion.

■ It is a settled rule that the reviewing court can not consider exceptions to the admission or rejection of evidence unless it is shown what was the particular objection made at the time the evidence was offered upon which the trial court made its ruling. The reason is that the precise ruling of the trial court can not be ascertained in the absence of the objection which was raised to the evidence. For the want of such specification the grounds numbered 2, 3, and 4 of the motion for new trial can not be considered. *Lively* v. *State*, 178 *Ga.* 693 (173 S. E. 836); *McDow* v. *State*, 176 *Ga.* 764 (3) (178 S. E. 869); *Luke* v. *State*, 183 *Ga.* 302 (188 S. E. 542); *Worthy* v. *State*, 184 *Ga.* 402 (4) (191 S. E. 457); *Stalnaker* v. *Baird*, 54 *Ga. App.* 734, 737 (189 S. E. 86); *Grier* v. *State*, 43 *Ga. App.* 348 (2), 349 (158 S. E. 634); *Central of Ga. Ry.* v. *Jaques & Tinsley Co.*, 23 *Ga. App.* 396 (98 S. E. 357). Besides, it does not appear that any of the evidence objected to was relevant. *Heath* v. *Muscogee Motor Co.*, 184 *Ga.* 49, 50 (190 S. E. 591).

■ In the amendment to their petition the petitioners alleged that several amounts were collected by F. A. Quillian from the estate of W. T. Latham which had not been accounted for, and

that F. A. Quillian as executor was indebted to the petitioners for the sums mentioned with interest. Among these items was an amount of $1865 which it was alleged that F. A. Quillian collected on July 6, 1927, from the Latham estate which was due by the Latham estate to the Tuck estate. It appears that $2500 had been loaned by Mr. Quillian to W. T. Latham from the funds of the Tuck estate. Mr. Quillian acted as attorney for Mrs. Latham, the administratrix of W. T. Latham, and as such he foreclosed on certain land in Meriwether County and bid it in for the Latham estate. Afterwards he sold this land to one Coursey for $1500. He finally collected $1865 from Coursey to whom Mrs. Latham deeded the land. He had an agreement with Mrs. Latham that the money collected from Coursey would be applied as a credit on the $2500 loan which was owing to the Tuck estate. The contention of the defendant was that instead of doing this Mr. Quillian had applied this money on a debt of the Latham estate to one Smith. In support of this contention the defendant offered in evidence a security deed for the principal sum of $1000, executed in 1915, from W. T. Latham to Mrs. Annie Smith. He also offered in evidence an agreement to extend the loan between W. T. Latham and H. N. Smith, administrator of Mrs. Smith, and a paper in the form of a check payable to H. N. Smith for $50 signed by F. A. Quillian on which was written a notation "balance of loan for W. T. Latham." These three papers were rejected from evidence, to which ruling the defendant excepted. It is undisputed that Mr. Quillian collected the $1865 either in 1927 or 1928, and that he did not apply it towards the payment of the loan made by the Tuck estate to W. T. Latham. The collection was not included in any return to the ordinary and was not credited on the Tuck note.

The defendant claimed that, instead of applying the money in partial extinguishment of the debt of the Latham estate to the Tuck estate, he applied it to the payment of a debt of the Latham estate to the Smith estate. There is no explanation why he did so. Hence it must be treated as an arbitrary diversion of the money from the Tuck estate to the Smith estate. Having received the money under an agreement to apply it as a credit on the debt to the Tuck estate, it was not a good answer to say he had paid another debt owing by the Latham estate. Under the facts, when that money came into his hands, he held it as executor

of the Tuck estate. It follows that the court did not err in ruling out the evidence offered to show that he had paid it on the Smith debt. Furthermore, there was practically no dispute as to the existence of a debt to the Smith estate, and there was no harm done to the defendant by excluding the deed, extension agreement, and check from evidence.

In regard to the agreement to extend the loan between Latham and Smith as administrator, there was no proof of the execution of the instrument by handwriting or otherwise, and for this additional reason it was properly excluded.

In regard to the check purporting to be a final payment on the Smith loan it does not appear that the check was indorsed by H. N. Smith or was paid by the bank, and it was inadmissible for this reason also. This disposes of grounds 5, 6, and 7 of the motion.

In regard to the exclusion by the court of the bank deposit book, the stub-check book, and the bank statements showing deposits and withdrawals from the bank account of F. A. Quillian, executor, they were properly excluded because they were not sufficiently identified. No person connected with the bank was examined to show the genuineness of the pass book and statements. No one testified as to the stub-book except that it was found among Mr. Quillian's effects. This disposes of grounds 8, 9, and 10.

The instruction complained of in ground 11 was to the effect that the executor can not legally sell notes due to him personally to the estate that he represents, etc. The only notes to which this charge could apply were those of M. E. Crane. The entry on the executor's account shows that he took a credit of $2500 in these terms "7/9/23—F. A. Quillian (for purchase of M. E. Crane notes)." If Mr. Quillian took the money from the estate with which to buy the notes it is immaterial whether they were payable to another person or payable to himself. In the absence of any evidence accounting for the Crane notes or their proceeds, he was still chargeable with the amount spent in purchasing them. The charge did not enlarge his responsibility. The charge was not error as not being applicable to the evidence.

In ground 12 complaint is made that the court charged the jury: "Bear in mind, 'We the jury find for the respondent' would

mean, gentlemen, that you approve the settlement tendered here in court." The burden was upon the defendant to show that he had correctly handled the estate. It was not harmful to him for the court to say that the effect of a verdict in his favor would mean that the jury approved of his "settlement." The charge was harmless. The charge is not subject to the objection that it was confusing or that it deprived the jury of its freedom to consider where the preponderance of the evidence lay.

■ Ground 13 complains of an omission to charge the jury as to a set-off which was pleaded by the respondent. After stating the contentions of the parties the court stated to the jury: "If I have omitted any of the contentions, that you can supply such omission by reference to these pleadings you have out with you; if I have erroneously stated these contentions, you correct such error by reference to these pleadings, and you ascertain for yourselves what the true contentions of the parties in this case are." He further charged: "Now, as I have just told you, gentlemen, the burden of proof is upon the respondent to show the correctness of each and every item that he claims in here (indicating), show the correctness of the administration of this estate, not only by him but by his predecessor in office. . . You will ascertain whether the legatees are due anything from the estate. You have the evidence. Take it and study it, and if you find that the legatees or movants are due anything, then determine whether they have received as credits on that amount; if so, deduct it." This ground is without merit.

■ The evidence authorized the verdict, and no error appears.

*Judgment affirmed. Sutton and Felton, JJ., concur.*

ON MOTION FOR REHEARING.

STEPHENS, P. J. It is contended that this court overlooked certain identifications of the check stub-book and of the copy of the bank statement, which were offered in evidence and excluded by the court. As to the stub-book it appears that Mr. Poole testified that he had a check stub-book of the Lowry National Bank and said "I will state that that is Mr. Quillian's stub-book of the Lowry National Bank. I am familiar with Mr. Quillian's handwriting.". Other evidence showed that during the period in controversy the funds of the estate were deposited in the First National Bank which was "the successor" of the Lowry National

Bank. In the motion for new trial it is claimed that the book offered was "the original stub check-book of the estate," without stating that it was the book about which Mr. Poole had testified or that it was of the First National Bank in which the funds were deposited. Without explanation, this was not sufficient identification. There is no evidence that a record of the checks drawn on the First National Bank was made on the Lowry National stub-book. Other reasons might be given why it was not error to exclude the stub-book.

As regards the bank statement offered in evidence, there is no connection in the evidence between it and the statement as to which Mr. Poole testified that he had an agreement with opposing counsel that it was a copy of the bank statement of the estate of Lena A. Tuck. The statement offered in evidence should have been identified as the one about which he had the agreement. If the agreement had been in writing on or attached to the statement that would have identified it. Moreover agreements between counsel to be recognized must be in writing. The statement tendered in evidence simply gave dates and amounts of deposits and withdrawals, the payees of checks not being named. Thus it does not appear how the statement could have accounted for the disbursements. This could have been done only by the canceled checks or other vouchers or by direct testimony.

. *Rehearing denied. Sutton and Felton, JJ., concur.*