35059. WARREN *et al. v.* GRAY.

DECIDED JULY 12, 1954.

*C. D. Stewart, Joseph S. Crespi,* for plaintiffs in error.
*Wm. F. Buchanan, Newell Edenfield,* contra.

NICHOLS, J. 1. Evidence that Warren neither paid anything nor offered any consideration to Gray for cancelling the contract was not objectionable as misleading the jury in reaching legal conclusions, as was contended in special ground four. A contract may be rescinded by mutual consent, in which case the surrender by each party of his rights under the contract is sufficient consideration (Code § 20-905; *Riggens* v. *Pomona Products Co.,* 82 *Ga. App.* 636, 61 S. E. 2d 682; *Vlass* v. *Walker,* 86 *Ga. App.* 742, 72 S. E. 2d 464); but it is also possible that a party to a valid contract might require some additional consideration before surrendering valuable rights under the contract. The jury could not have been misled by this evidence.

2. The plaintiff testified that a group of checks handed to him represented expenditures made in fulfilment of the contract, and were given in compliance with the contract for materials and labor done. The objection to this evidence, as set out in ground 5, was that it was a conclusion of the witness, without testimony as to bills, labor, or anything else paid by the checks. Insofar as this evidence shows what the expenditures were for, it is a statement of fact. *Payne* v. *Franklin County,* 155 *Ga.* 219 (1) (116 S. E. 627); *Keramidas* v. *Rusch,* 58 *Ga. App.* 615, 616 (4) (199 S. E. 590); *City of Atlanta* v. *Sciple,* 19 *Ga. App.* 694 (5) (92 S. E. 28). The witness was subjected to thorough cross-examination as to what many of the individual checks were for. The overruling of the objection was not reversible error.

3. The court excluded Warren's testimony that he had never abandoned a job and would not have left the Gray job without Gray's consent. In special ground 6, this evidence is said to be

material to the issue of a rescission by mutual consent. But testimony as to what Warren had done in the past and on other jobs has little bearing on what happened in the transaction in question. *Mendel* v. *Converse & Co.*, 30 *Ga. App.* 549 (40) (118 S. E. 586). Warren testified that Gray agreed to rescind the contract; what Warren would have done if Gray had not so agreed was hypothetical and immaterial.

4. It is contended in special ground 7 that the court erred in denying the defendant, Warren, the right to offer testimony in rebuttal to that of the plaintiff's wife, but this ground fails to show what Warren would have testified, and so is incomplete and presents nothing for consideration. Likewise, special ground 13, complaining of the admission in evidence of plaintiff's exhibit P-6 (Z-30), does not show what the evidence was and, since it requires reference to the record, is not complete and need not be considered.

5. Error is assigned in ground 8 on the admission in evidence of five invoices for cabinets sold to Mrs. Gray by Fulton Cabinet Company, over the objection that they represented purchases by one not a party to the contract and led the jury to believe that the defendants were liable for Mrs. Gray's bills. There was evidence that Gray ratified the purchase by paying for the cabinets, and it is not contended that the items purchased were not to be furnished under the terms of the contract. This ground is without merit.

6. Error is assigned in ground 9 upon the admission in evidence of an invoice from Flowers Lumber Company for a disappearing stairway, contended not to have been provided for in the contract. The same complaint is made, in ground 12, of the admission of checks marked for "yard work."

The contract provided that Warren and Morris were "to furnish all labor and materials necessary for the work specified below . . . according to the following specifications, the F. H. A. material list and the F. H. A. approved drawings of finished dwelling. . . To build onto the dwelling at 282 Dodson Drive a living room, front stoop, terrace, one bedroom, one bath, and closets, hall and stairway to basement according to plans and specifications drawn by Mr. Gray and approved by the F. H. A. of Atlanta, Georgia, office. One exception to be

omitting the false fireplace in the living room. It is agreed that the contractor is to install a new gas forced-air furnace in the basement; also to build a new septic tank in accordance with Fulton County specifications, using if possible the drain field now existing; also to pave a driveway as outlined on the plot plan of drawings; a new roof is to be over entire dwelling; refinish floors, walls and ceiling of existing structure; install 4″ rock wool insulation over ceiling of all habitable rooms; rough grading in accordance with plot plan. . . All work and material used is to meet F. H. A. requirements." The drawings referred to showed a "hall and disappearing stairway." The specifications referred to showed, under the heading of "Stairs," a job-built pine basement stairway, and a mill-made and assembled disappearing stairway; and under the heading, "Landscaping," existing lawns were to be seeded for the full width of the lot and 100 feet from the rear of the building; shrubbery was to be selected and located by the owner.

"It is generally held that where a building contract refers to the plans and specifications and so makes them a part of itself, the contract is to be construed as to its terms and scope together with the plans and specifications. The specifications are but the particulars or details of the plan, and the term 'plan' fairly embraces the specifications for the buildings. Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself. Where, however, the plans and specifications are referred to in the contract for a particular specified purpose, such specifications can serve no other purpose than the one specified, and are foreign to the contract for all other purposes. In the absence of express provision in the contract, the specifications can neither restrict nor extend the scope of the contract to subjects other than those covered by the contract. Where there is a conflict between, or an inconsistency in, the provisions of a building contract and the provisions of the plans and specifications, the positive language of the contract should prevail." 9 Am. Jur. 11, § 11. The plans, specifications, and drawings were made a part of the contract by its express terms in the present case, as they were in *McArthor* v. *McGilvray*, 1 *Ga. App.* 643 (57 S. E. 1058). The

contract was "to furnish all labor and materials necessary for the work specified below," according to the material list and the drawings of the finished dwelling; to build onto the dwelling certain rooms, "hall and stairway to basement," according to the plans and specifications drawn by Gray and approved by the F. H. A.; and to do "rough grading according to plot plan." The only work covered by the specifications but expressly excluded from the contract was a false fireplace, specified as a part of the living room, which indicates that the other items in the plans were to be built, including a disappearing stairway as part of the hall. See *Pittsburgh Plate Glass Co.* v. *American Surety Co.*, 66 *Ga. App.* 805 (19 S. E. 2d 357). The disappearing stairway and the "yard work" were included under the terms of the contract, and the court did not err in admitting evidence of payments for these items.

7. Complaint is made in grounds 10 and 11 that the court admitted in evidence receipts, invoices, and canceled checks, which, insofar as they showed payment for the same items, confused the jury in arriving at the amount of money spent by the plaintiff in performing the contract, and led the jury to believe that the payments exceeded those actually made; the evidence is said to be prejudicial because the plaintiff testified that he did not know what part of the materials went into the new part of the house the defendants had contracted to build onto the existing dwelling. It appears that this evidence was introduced in response to the defendants' notice to produce. Many of the invoices, receipts, and checks referred to each other, so as to show what was purchased or paid for. That such evidence of payment was cumulative does not render it inadmissible; as more than one witness may testify to a fact, so there may be more than one document tending to prove a fact. *Walker* v. *Walker*, 14 *Ga.* 242 (6); *American Cotton College* v. *Atlanta Newspaper Union*, 138 *Ga.* 147 (2) (74 S. E. 1084).

The only evidence which we find in the record concerning materials in the original portion of the house pertained to certain electrical wiring and circuit-breakers. The plaintiff explained: "I had to put some of this equipment in the old part of the house and, to carry the circuits in the new part of the house, I had to pick up power from the old panel." Although the plaintiff could

not state how much of the wiring had been done in the existing portion of the house, it was nonetheless part of the construction of the addition. Furthermore, there was, under the contract, some work to be done upon the existing structure, such as roofing, insulating, and finishing the floors and walls. The objection was properly overruled.

8. In grounds 14 and 19 of the motion for a new trial, error is assigned on the exclusion by the court of two documents offered in evidence by the defendants. The first is a sheet of notebook paper dated October 6, 1950, showing "total additional estimated cost," which is asserted to show the understanding between Gray and Warren on the date the job was turned over to Gray, and to support the defense of rescission. The other document is also an unsigned memorandum entitled, "Est. by K. G. Warren when departing from job." This document was also made when the parties are contended to have rescinded the contract, and it is asserted that it would show the agreement between them and also show that the job could have been finished within the contract price of $6,500. These instruments were unsigned; the grounds of the motion do not show that any foundation was laid for their admission. Code § 38-701; *Quillian* v. *Tuck*, 66 *Ga. App.* 472, 473 (3a) (17 S. E. 2d 921). Accordingly, the court did not err in excluding these documents.

9. The court charged: "He [the plaintiff] alleges, in substance, that on September 22, 1950, he entered into a contract with the defendants, in which they undertook to construct certain buildings on lands belonging to him"; and the defendants in ground 15 contend that this was argumentative and an erroneous construction of the contract. The statement that the defendants "undertook to construct certain buildings" was not materially different from the provision in the contract that the defendants were "to build onto the dwelling at 282 Dodson Drive a living room," etc., since the words "certain buildings," had reference to the contract. Whether the plaintiff or his wife owned the property was not material. The excerpt from the charge was a fair summary of a part of the plaintiff's allegations, and so was not error. *Taber Mill* v. *Southern Brighton Mills*, 49 *Ga. App.* 390, 398 (13) (175 S. E. 665); *Gledhill* v. *Harvey*, 55 *Ga. App.* 322, 327 (4) (190 S. E. 61); *City & Suburban Ry.* v. *Findley*, 76 *Ga.* 311 (3).

10. Ground 16 shows that the court charged: "Generally, all parties to the contract must consent to its rescission or abrogation. There must be a meeting of the minds in order to constitute a rescission or abrogation." The record shows that the court next charged: "Such agreement to rescind need not necessarily be expressed in writing or by parol. The acts and conduct of the parties as shown by the evidence adduced before you may be considered by you in determining whether there has been an agreement to rescind." Grounds 17 and 18 complain of the next statements in the charge: "After a contract is made, neither party to such contract can rescind it merely by giving notice to the other party of his intention to do so, without the agreement or consent of the other, but it may be rescinded with the consent of both parties. By 'both parties' in this instance I mean the contracting parties, that is to say, J. W. Gray on the one part and Roy Morris and Kermit G. Warren on the other part."

The portions of the charge complained of in grounds 16 and 17 are not unsound as abstract principles of law. *Central of Georgia Ry. Co.* v. *Gortatowsky*, 123 *Ga.* 366 (5) (51 S. E. 469). The portion complained of in ground 17 did not eliminate from the jury's consideration evidence of the acts and conduct of the parties, including evidence of a new contract between Morris and Gray, as tending to show a rescission of the contract.

The last statement of the excerpt quoted, as complained of in ground 18, was not erroneous in failing to state that Gray and either one of the defendants could rescind the contract. "It is no objection to a charge, that it does not go far enough, provided it states the law correctly as far as it goes." *Durand* v. *Grimes*, 18 *Ga.* 693. The object of the charge was to state that the contract could not be rescinded by the action of Morris and Warren alone, as joint contractors. There was no evidence tending to show that Morris and Gray acted separately in either rescinding or abandoning the contract. The charge complained of in grounds 16, 17, and 18 was not error for any reason assigned.

11. Complaint is made in ground 20 that the verdict for $2,530.33 is excessive and unsupported by the evidence. The plaintiff's testimony as to his damages was as follows: "I paid a total amount of $9,184.13 for completing the house. That was

$2,684 more than the $6,500 contracted for. That includes the $200 for removing stone. The amount that I contend was chargeable to Mr. Warren and Mr. Morris is $200 less than the amount I have here. It should be $2,484.13. . . As to whether the amount paid Mr. Morris by the hour [after October 6] is included in the total cost of $9,500, I paid him the hourly rate. It is included in the $9,000, which was the actual cost of construction. . . This bill for $6, for blasting, is in addition to the bills for the basement and will reduce my bill $206. These contractors now owe me $2,736.33, the amount named in the original petition, less $206. That covers everything, labor, materials, and subcontractors."

While the plaintiff's own conclusions are somewhat inconsistent, the checks noted in the brief of evidence total $8,068.49, and the invoices which the plaintiff testified he paid, but for which no corresponding check appears, total $1,198.79. Adding these two amounts and subtracting the $206 paid by the plaintiff for blasting, leaves the total cost shown by the documentary evidence at $9,061.28. This exceeds the contract price by $2,561.28, and so the verdict for $2,530.33 was supported by the evidence.

12. As to the general grounds of the motion, there was evidence that Warren struck his name from a copy of the contract and refused to perform further on October 6, and that Morris did not then assume responsibility for the performance of the contract. The defendant Warren testified: "As to whether I told Mr. and Mrs. Gray that I would not pay a dollar of my money to complete the contract, I said that I didn't think it would be right for me to stand more than $6,500 to complete the contract." He further testified: "As to whether I told them that I was working so hard that I didn't have time to be with them more, that was true."

The defendant Morris testified: "On the 6th of October, Mr. and Mrs. Gray talked to Mr. Warren about two hours and he said something to the effect that he was going to walk off the contract. . . I don't think they insisted on Mr. Warren staying on and finishing the job. I recall that they said he had signed the contract." Morris further testified: "Mr. Warren said that he didn't have the proper time to look after the job as it should be and he wanted them to take it over."

Morris agreed with Gray to work on as a carpenter at $1.50 per hour, and he worked until October 27; as he testified, "When I got through with the rough carpenter work I left there." The job was not finished at that time.

The defendants argue that a mutual rescission of the contract resulted when Gray hired Morris as a carpenter, and that when Gray and Morris rescinded the contract, Warren was released therefrom also.

An existing contract may be discharged by a subsequent, inconsistent agreement covering the same subject matter and between the same parties. *Hewlett* v. *Almand*, 25 *Ga. App.* 346 (103 S. E. 173); *Avary* v. *Avary*, 202 *Ga.* 22, 34 (41 S. E. 2d 314). But, in the present case, Warren had breached the contract before the plaintiff agreed to hire Morris as a carpenter. The subsequent hiring agreement was not between the same parties who entered into the original contract, and so they could not impliedly rescind it. The plaintiff's conduct showed that he treated the contract as breached by both Warren and Morris, and then, to complete the performance of it on his own, he employed help. Morris, by doing the rough carpenter work called for by the contract at an hourly wage, was no longer performing under the contract which he had signed, nor did he offer to perform the contract after October 27, but "left there" as alleged.

The evidence supported the case alleged in the petition, and the court did not err in denying the motion for new trial.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*