OXFORD DEVELOPMENT CORPORATION, THE QUADRANGLE CORPORATION, VILLAGE MANAGEMENT COMPANY, INDIANA MORTGAGE & INVESTMENT CO., INC., AND VILLAGE MANAGEMENT CO., INC., D/B/A BEECHWOOD SQUARE, A GENERAL PARTNERSHIP: OXFORD DEVELOPMENT CORP., THE QUADRANGLE CORPORATION, LIPPMAN ASSOCIATES, INC., ROBERT A. ROSE, AS TRUSTEE FOR THE PURPOSE OF RECONVEYANCE OF THE HOUSING AUTHORITY OF THE CITY OF INDIANAPOLIS, THE HOUSING AUTHORITY OF THE CITY OF INDIANAPOLIS *v.* RAUSAUER BUILDERS, INC. AND CLYDE RIDDLE & SONS.

[No. 1-173A15. Filed December 3, 1973.]

*Thaddeus R. Spurgeon,* of Oaklandon, for appellee Rausauer Builders, Inc. and *Chalmer Schlosser, Jr., Schlosser, White & Schlosser,* of Indianapolis, for appellee Clyde Riddle & Sons.

*Gene R. Leeuw, Klineman, Rose and Wolf,* of Indianapolis, for appellant.

LYBROOK, J.—Defendants-appellants Oxford Development Corporation, et al. (Oxford) appeal from the judgment of the trial court ordering foreclosure of mechanics' liens in favor of plaintiff-appellee Rausauer Builders, Inc. (Rausauer) and defendant and cross-plaintiff-appellee Clyde Riddle & Sons (Riddle). The action stemmed from an alleged breach

of a Sub-Contract Agreement (contract) between Oxford and Rausauer.

The facts relevant to the issues on appeal are as follows:

On July 2, 1968, Oxford and Rausauer entered into a contract whereby Rausauer, as sub-contractor, agreed to furnish certain materials and perform certain work in the construction of an apartment project known as Beechwood Gardens in Indianapolis. Rausauer in turn hired Riddle to perform certain work.

Rausauer commenced work on the project in August of 1968. A dispute subsequently arose as to whether certain work performed was included within the contract or was an "extra" for which Rausauer was entitled to payment over and above the contract price. Oxford's job superintendent, Hap Chandler, had directed Rausauer to complete the work in question. The work had in turn been performed by Riddle at Rausauer's direction.

On October 13, 1969, Rausauer billed Oxford for the work as an "extra". Following Oxford's refusal to pay for the work in question, Rausauer ceased all work under the contract on October 30, 1969.

Rausauer and Riddle filed notices of intention to hold a lien upon Oxford's premises, in the Office of the Recorder of Marion County. Rausauer subsequently filed its complaint for foreclosure of its lien, and Riddle then cross-claimed for foreclosure of its lien.

After hearing evidence on the issue of whether the disputed work was an "extra" or work encompassed within the contract, the court issued the following ruling:

"Court being duly advised now finds and adjudges that the underlaying done was extra work and not encompassed in the contract."

Thereafter, the court heard evidence on Rausauer's claim for additional sums for labor performed pursuant to the con-

tract, on Riddle's cross-claim for unpaid labor and foreclosure of its lien, and on Oxford's counter-claim against Rausauer for damages resulting from an alleged breach of contract by Rausauer.

Judgment was entered in favor of Rausauer and Riddle against Oxford. The court found that there was due Rausauer from Oxford the sum of $17,268.71 plus $5400.00 attorney fees. It was also found that there was due Riddle from both Rausauer and Oxford the sum of $4801.00. Further due Riddle from Oxford was $1,087.00 plus $1,800.00 attorney fees.

The court adjudged that Rausauer and Riddle held liens against Oxford's premises to the extent of their judgments and ordered the liens foreclosed.

Oxford appeals, raising the following issues for review:

1. Whether the court erred in finding that the work in dispute was an "extra" not encompassed in the contract.
2. Whether the court by its finding reformed the contract between Rausauer and Oxford, thereby committing error.
3. Whether the court erred in awarding Rausauer damages in excess of the sum due for performance of the disputed work.
4. Whether the award of attorney fees to Rausauer was excessive and not supported by the evidence.
5. Whether the assessment of attorney fees in favor of Riddle was erroneous as a matter of law.
6. Whether the assessment of damages against Oxford and in favor of Riddle was erroneous as a matter of law.

## ISSUE 1.

The central controversy in this case is whether the installation of "underlayment" during the construction of the defendants' apartment complex was an item of work included within the contract or an item of "extra" work for which Rausauer was entitled to payment over and above the contract price.

Oxford insists that the trial court erred as a matter of law

in construing the contract to exclude the installation of under-layment as an item of work to be performed thereunder.

In examining the court's construction of the contract, we are mindful that our standard of review requires affirmance of a judgment if it can be sustained on any theory presented by the issues. *Devine* v. *Grace Construction and Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862. Further, all reasonable presumptions are indulged in favor of the trial court, and this court will make no presumptions in favor of an appellant to sustain any alleged error. *New York Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N.E.2d 453.

The primary rule of construction is to ascertain and give effect to the parties' intentions. To accomplish this end, the agreement should be construed as a whole. *Ahlborn et al.* v. *City of Hammond* (1953), 232 Ind. 12, 111 N.E.2d 70; *Wiltse et al.* v. *Cornell* (1970), 146 Ind. App. 447, 256 N.E.2d 572; *Kuhn* v. *Kuhn et al.* (1955), 125 Ind. App. 337, 123 N.E.2d 916.

Oxford argues that since the plans and specifications for the construction are expressly incorporated into the contract under paragraph FIRST of the sub-contract agreement and the plans and specifications provide for the installation of underlayment, the work is included within the contract as a matter of law.

Paragraph FIRST of the contract is as follows:

"FIRST. The Sub-contractor agrees to furnish all material and perform all work necessary to complete the carpentry and roofing of 51 buildings in Phases 1, 2, & 3 of apartment project known as Beechwood Gardens, 5725 East 30th St., Indianapolis, Indiana. Job Supt.—Hap Chandler

(Plans dated 12/28/67 and revised 2/22/68 and specks dated 2/22/68 incl. addendum dated 1/5/68) for the above named structure, according to the plans and specifications (details thereof to be furnished as needed) of ————— ————— Architect, and to the full satisfaction of said Architect."

It is true that parties may, by express provision, make plans and specifications a part of their contract. Where this is done, those plans and specifications will control with the same force as though they were incorporated in the contract itself. *Staley et al.* v. *New et al.* (1952), 56 N.M. 756, 250 P. 2d 893; *Warren et al.* v. *Gray* (1954), 90 Ga. App. 398, 83 S.E.2d 86; *Kandalis* v. *Paul Pet Construction Co.* (1956), 210 Md. 319, 123 A. 2d 345.

However, a reference to plans and specifications is not effective beyond the parties' agreement. Where qualifying words appear in the contract, such reference will be limited accordingly. *Hill & Combs* v. *First Nat. Bank of San Angelo, Tex.* (5th Cir. 1944), 139 F. 2d 740.

Absent express provision, the plans and specifications cannot operate to either restrict or extend the scope of the contract to subjects other than those covered by the contract. *Warren et al.* v. *Gray, supra; Pittsburgh Plate Glass Co.* v. *American Surety Co.* (1942), 66 Ga. App. 805, 19 S.E.2d 357.

Paragraph SECOND lists specific items of work to be performed under the contract as follows:

"SECOND. The Sub-contractor agrees to promptly begin said work as soon as notified by said Contractor, and to complete the work as follows: ROUGH PHASE: Furnish all labor and equipment to erect all exterior and interior wall panels; apply drywall to one side of party wall; floor joist & plywood sub floor; trusses; plywood roof deck; roofing includes felt, shingle & vent-a-ridge; all exterior trim; soffit system; siding; stairways; exterior doors, shutters. Windows & sliding glass doors will be installed by others. A reasonable amount of framing adjustments shall be included. 'M' building will be conventionally framed.

TRIM PHASE: Install all stairway and landing trim, base, casing (doors & windows). Kitchen cabinets, kitchen and bath tops, medicine cabinets, mail boxes, closet shelves and poles, access panels, hardware, interior doors and other miscellaneous items as shown on drawings."

In our opinion, the court could have reasonably found that paragraph SECOND limited the reference to plans and speci-

fications in paragraph FIRST. Underlayment is not listed as an item of work to be performed under paragraph SECOND.

Alternatively, it could be found that the contract is ambiguous on its face due to an apparent conflict between these two parts of the contract. It has been held that in case of ambiguity, a contract will be construed against its maker—in this case, Oxford. *Philco Corp.* v. *"Automatic" Sprinkler Corp. of America* (7th Cir. 1964), 337 F. 2d 405; *Wabash Life Insurance Co.* v. *Hacker* (1960), 130 Ind. App. 342, 164 N.E.2d 666; *Lacy* v. *White* (1972), 153 Ind. App. 504, 288 N.E.2d 178.

Moreover, where a contract is ambiguous, the court will apply the construction which has been given it by the parties. *City of Vincennes* v. *Citizens' Gas Light Co.* (1892), 132 Ind. 114, 31 N.E. 573. *Mobley* v. *J. S. Rogers Co.* (1918), 68 Ind. App. 308, 119 N.E. 477; *Town of Hagerstown* v. *Liberty, etc., Power Co.* (1926), 84 Ind. App. 115, 150 N.E. 116.

In the case at bar, the evidence most favorable to the appellee tends to support a finding that the installation of underlayment was considered an "extra" by the parties. Henry Sauer, Jr., secretary-treasurer of Rausauer, testified that he discussed the installation of underlayment with Hap Chandler, Oxford's job superintendent. Chandler instructed Sauer to proceed with the installation and said that a written work order would be drafted at a later date. Chandler's replacement, Morris Walton, instructed Sauer to bill Oxford for the underlayment.

Allen Sklare, president of defendant Lippman Associates and a signatory to the contract, told Sauer "we'll take care of you" during a discussion concerning the underlayment.

The court could have reasonably concluded on the basis of the above evidence that both parties were proceeding on the assumption that the installation of underlayment was an item of "extra work" not encompassed in the contract.

We therefore cannot conclude that the trial court erred in its finding.

As a subsidiary issue, Oxford insists that Rausauer was not entitled to payment for the work as an "extra" due to paragraph FIFTH of the contract which reads:

"No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made."

In support of its contention, Oxford places reliance on *Rebekah Assembly, etc.* v. *Pulse* (1910), 47 Ind. App. 466, 92 N.E. 1045. However, the facts and holding of that case are not applicable in the case at bar. In *Rebekah* the contractor sought extra compensation for work which had been performed within the scope of the contract. No ambiguity appeared on the face of the contract. In fact, the contractor predicated his case on the theory that the work was required under the terms of the contract.

Moreover, this case and others cited by Oxford are inapplicable with respect to this contention since the record contains evidence from which the trial court could have concluded that Oxford waived compliance with this provision. As we have previously noted, Rausauer performed the work at Oxford's direction and was assured that a work order would be subsequently drafted. Also, additional testimony revealed that Rausauer, at other times, had performed "extra work" at Oxford's direction and that the work orders were drafted at a subsequent date. See, *American Sheet Metal Works, Inc.* v. *Haynes* (1965), 67 Wash. 2d 153, 407 P. 2d 429; *Rivercliff Co.* v. *Linebarger* (1954), 223 Ark. 105, 264 S.W.2d 842, *cert. denied,* 348 U.S. 834.

## ISSUE 2.

Oxford next contends that the court, by its finding, reformed the written contract, thereby committing reversible error. Its argument with respect to this issue is based on the premise

that the disputed work was included in the contract as a matter of law.

Since we have determined under issue one above that the court did not err in finding that the installation of underlayment was an "extra" not encompassed in the contract, appellant's argument must fail.

## ISSUE 3.

Oxford next contends that the court erred in awarding Rausauer damages in excess of the sum due for performance of the disputed work. In addition to compensation for installation of the underlayment, the judgment included compensation for work performed under the contract for which Rausauer had not received payment prior to abandoning the project.

We have combined appellant's arguments 3 and 4 under this single issue for the reason that only one question in these sections of Oxford's brief has been preserved in its motion to correct errors. That question is whether, if the installation of underlayment was not included within the contract, Rausauer was entitled to abandon work for non-payment therefor.

While the contract did not encompass this work, it did in fact provide that Rausauer would be compensated for "extra" work. In our opinion, the refusal to make payment for "extras" which had been performed at Oxford's request could be considered a breach entitling Rausauer to abandon work.

The damages awarded in excess of the cost of the disputed work were assessed for work performed under the contract for which Rausauer had not received payment prior to abandonment. At trial, Oxford sought to backcharge against this sum for costs incurred in securing completion of the contract with another sub-contractor. However, the court found against Oxford on this theory, and Oxford failed to

preserve any alleged error with respect to this finding in its motion to correct errors.

We therefore hold that the trial court did not err in awarding Rausauer damages in excess of the sum due for installation of the underlayment.

## ISSUE 4.

Oxford next contends that the award of attorney fees to Rausauer was excessive and not supported by the evidence.

It is first submitted that the award of $5400.00 was erroneous because Rausauer requested only $1500.00 in its complaint, and no motion to amend the pleadings to conform with the evidence was made at trial. However, since the request for attorney fees could have been amended to conform with the evidence submitted, the complaint will be deemed amended for purposes of this appeal. Rule AP. 15(D).

Oxford also contends that the award is not supported by the evidence. Thaddeus Spurgeon testified extensively concerning the amount of work spent in preparation for the case. Based on this testimony, Stephen Free, an attorney experienced in mechanics' lien cases, testified that in his opinion a reasonable fee would be $9,105.00.

We therefore are unable to conclude that the award of $5400.00 is not supported by the evidence.

## ISSUE 5.

Oxford next argues that the assessment of attorney fees in favor of Riddle was erroneous since its cross-complaint made no request therefor and no motion was made to conform the pleading to the evidence. An application of Rule AP. 15(D) causes this argument to fail for the same reason as set forth in ISSUE 4.

## ISSUE 6.

Oxford finally argues that the court erred in assessing damages against Oxford and in favor of Riddle.

Appellant's assertion that the damages awarded to Riddle are erroneous as a matter of law since there was no contract between Oxford and Riddle lacks substance. Riddle's cross-claim was not an action in contract. Rather, it sought foreclosure of a mechanic's lien, the validity of which was stipulated by the parties prior to trial. Further, Oxford's contention that the assessment of the sum of $1,087 in favor of Riddle against Oxford was erroneous must fail since the issue is not preserved in the motion to correct errors.

Oxford next contends that the damages of $4,801.00 assessed in favor of Riddle against both Oxford and Rausauer are duplicitous with respect to Oxford since this element of damages was included in the sum of $17,268.71 found due Rausauer from Oxford. Appellees concede the validity of Oxford's argument with respect to this contention.

Pursuant to Rule AP. 15(M), we therefore order modification of the judgment, as follows:

The sum of $17,268.71 found due Rausauer from Oxford shall be modified to $12,467.71. Further, the judgment in the sum of $4801.00 found due Riddle from both Rausauer and Oxford shall be modified to the extent that it is due Riddle from Oxford only.

In all other respects the judgment of the trial court is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 304 N.E.2d 211.